No. 23-40216

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

KEITH M. COLE,

*Plaintiff-Appellant,*

**v.**

LORIE DAVIS; BRYAN COLLIER; TEXAS DEPARTMENT OF CRIMINAL
JUSTICE; MARY GILDER; BOBBY LUMPKIN, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS
DIVISION,

*Defendants-Appellees.*

———————————

On Appeal from the United States District Court
For the Eastern District of Texas
No. 1:20-CV-15

———————————

APPELLANT'S OPENING BRIEF

———————————

Amaris Montes
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
(202) 455-4399

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

A.  Keith M. Cole, Plaintiff/Appellant;

B.  Amaris Montes, Attorney for Appellant;

C.  Samuel D. Weiss, Attorney for Appellant;

D.  Lorie Davis, Defendant/Appellee;

E.  Bryan Collier, Defendant/Appellee;

F.  Bobby Lumpkin, Defendant/Appellee;

G.  Mary Gilder, Defendant/Appellee;

H.  Texas Department of Criminal Justice, Defendant/Appellee;

I.  Jeanine Marie Coggeshall, Attorney for Defendants/Appellees;

J.  Jacob Edward Przada, Attorney for Defendants/Appellees;


*/s/ Amaris Montes*

Amaris Montes

## STATEMENT REGARDING ORAL ARGUMENT

Keith Cole respectfully requests oral argument because the case presents several complex disputed statutory legal issues presented on appeal which are now presented by qualified counsel after Cole proceeded *pro se* in the proceedings below. Oral argument would enable counsel to address any questions the Court may have.

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT……………………………...ii

JURISDICTIONAL STATEMENT……………………………………………..1

STATEMENT OF ISSUES……………………………………………………...1

STATEMENT OF THE CASE………...……………………………………...2

SUMMARY OF THE ARGUMENT…………………………………………..11

STANDARD OF REVIEW ....................................................................................12

ARGUMENT…………………………………………………………………...12

    I.    Cole has established a genuine dispute that his religious exercise was substantially burdened when Defendants failed to provide him with a diet that conformed with his beliefs……………………..………………....12

    II.    The district court erred in holding that Defendants have a compelling interest in controlling costs, especially when Defendants presented no evidence related to the costs of providing Cole with non-pork meat…...19

    III.    The district court erred in holding that forcing Cole to pay for a non-pork meat substitute was the least restrictive means because Defendants provided no evidence that they considered any alternatives……………….………………………….………....26

CONCLUSION……………………………………………………………...36

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010) ....................................18
*Ali v. Stephens*, 822 F.3d 776 (5th Cir. 2016)................................................. passim
*Baranowski v. Hart*, 486 F.3d 112 (5th Cir. 2007)......................................... 9, 24
*Beerheide v. Suthers*, 286 F.3d 1179 (10th Cir. 2002) ......................................18
*Cadena v. El Paso Cnty.*, 946 F.3d 717 (5th Cir. 2020) ................................ 12, 13
*Chance v. TDCJ*, 730 F.3d 404 (5th Cir. 2013)............................................. 14, 21
*Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) ......................................................2
*Cutter v. Wilkinson*, 544 U.S. 709 (2005)............................................................13
*Ellison v. Connor*, 153 F.3d 247 (5th Cir. 1998)................................................25
*Holt v. Hobbs*, 574 U.S. 352 (2015) .............................................................. passim
*Jones v. Shabazz*, 352 F. App'x 910 (5th Cir. 2009) ...................................... 10, 27
*Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008)....................................................25
*Mayfield v. Texas Dep't of Crim. Just.*, 529 F.3d 599 (5th Cir. 2008)............. 19, 36
*Moussazadeh v. TDCJ*, 703 F.3d 781 (5th Cir. 2012) .................................... passim
*Muhammad v. Wiles*, No. 20-50279, 2022 WL 73047 (5th Cir. Jan. 7, 2022). 10, 35
*Ramirez v. Collier*, 142 S. Ct. 1264 (2022) ................................................... 13, 20
*Schlemm v. Wall*, 784 F.3d 362 (7th Cir. 2015)...................................................30
*Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008) ................................................25
*Spratt v. R.I. Dep't of Corr.*, 482 F.3d 33 (1st Cir. 2007) ...................................26
*Udey v. Kastner*, 805 F.2d 1218 (5th Cir. 1986) .................................................21
*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005) ......................................14
*Yellowbear v. Lampert*, 741 F.3d 48 (10th Cir. 2014)................................... 25, 30

## STATUTES

§ 2000cc–3(c) ........................................................................................................26
28 U.S.C. § 1291 ....................................................................................................1
28 U.S.C. § 1331 ....................................................................................................1
42 U.S.C. § 2000cc–1(a)................................................................................. 13, 26

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Cole alleges violations of the Religious Land Use and Institutionalized Persons Act. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court issued a final judgment on March 24, 2023 which disposed of all claims. ROA.300. Plaintiff-Appellant Keith Cole filed a timely notice of appeal on April 6, 2023. ROA.301-302.

## STATEMENT OF ISSUES

1. Whether the district court erred in granting summary judgment by deferring to Defendants generalized assertions that they had a purported compelling interest in cost saving, when Defendants presented no evidence about the costs of providing Cole his religious diet.

2. Whether the district court erred in granting summary judgment to Defendants when Defendants did not provide any evidence that they considered alternatives to meeting Cole's religious needs and did not address the alternatives offered by Cole.

## STATEMENT OF THE CASE[1]

Keith M. Cole is incarcerated in the Stiles Unit of the Texas Department of Criminal Justice, Correctional Division (TDCJ). ROA.9. Cole is a devout follower of the Baha'i faith. ROA.13. He studies and practices teachings from the Qur'an, the Torah, and the New Testament of the Christian Bible. ROA.9; ROA.282. This coincides with a religious diet, which is mandatory. Cole believes that "the Qu'ran clearly compels Plaintiff to abstain from eating pork meat" and "[i]n the Torah, Moses list[s] clean and unclean foods that God commanded [him] to reject and accept." ROA.13. Cole believes under "Deuteronomy 14, God clearly put a 'priority' on the consumption of animal meat" and as a result, "it is [his] sincerely held religious belief, that [he] must eat meat as a requirement to faithfully practice [his] religion in accordance with Deuteronomy 14." ROA.13. He "truly believe[s], that [his] religion prohibits anyone from purposefully restrict[ing] food that God commanded [him] to eat." ROA.13. As such, his religion compels him to eat non-pork meat with each meal. ROA.13.; ROA.282. Cole has been a long-time practitioner of this religious diet, and he has not eaten pork in over twenty years. ROA.13.

---

[1] In reviewing the district court's grant of summary judgment, this Court must view the evidence and draw reasonable inferences in the light most favorable to the non-movant party. *See Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019).

TDCJ purports to limit all food options to three menus which apply to all incarcerated people, regardless of their religious preference. ROA.287, ROA.201-204. This menu plan restricts people to the following options: (1) a regular tray containing all the items that are offered on the serving line; (2) a meat-free tray that contains all the items, except for meat; or (3) a pork-free tray that contains all the items available on the serving line, except pork. ROA.287; ROA.202. Defendants contend that if a meat-free or pork-free menu is chosen, there are various foods that are provided to replace the meat or pork for that meal. These alternatives only include non-meat items such as sliced cheese, beans, eggs, and peanut butter and jelly. ROA.14-15; ROA.202; ROA.287. Incarcerated people can choose from only these three menu plans. ROA.287; ROA.202-204.They can also purchase food from commissary using their own personal funds, which includes some items containing non-pork meat. ROA.14.

These limited menu options did not meet Cole's religious dietary needs, because the menu "effectively eliminated meat." ROA.14. Even non-meat replacements were often not provided, and Cole almost never received eggs or cheese as a replacement. ROA.15. Because Cole's religion required non-pork meat options, Cole was "forced to significantly modify his diet in almost [one-third] of [his] lunch and dinner meals" to exercise his religion. ROA.14. Cole was forced to

spend his own money to purchase meat and, "through the years, this cost has become substantive." ROA.14.

Cole submitted various grievances requesting non-pork meat options so that he may adhere to his religious diet. On May 13, 2018, he submitted a letter to Bryan Collier, the director of TDCJ, explaining that the current TDCJ menu imposes a substantial burden on his religious beliefs, and requesting non-pork meat options. ROA.21. TDCJ instructed Cole to submit a formal grievance about the issue, ROA.22. Cole submitted this grievance on June 3, 2018. ROA.24.

Cole fully exhausted the grievance process, continuously reiterating to TDCJ staff that he was not being provided religiously adequate meals. In his grievance request and subsequent appeals, he requested non-pork meat in his meals, and pointed to several options that TDCJ officials had to accommodate his request. ROA.24. Cole highlighted that no extra labor or human resources would be necessary to provide additional non-pork meat options—for example, there were many options where the individuals in kitchen preparation could use the same effort and time to prepare non-pork meat options as they do non-meat options (for example boiling beef links takes the same labor as boiling eggs, etc.). ROA.16; ROA.21-24. Cole stressed that he was not requesting a complex set of foods, or to have individualized preparation of his food; he was simply requesting non-pork meat options. ROA.24.

Prison officials responded to his grievance and stated that "food service staff follow policy and serve acceptable options when replacing pork" and that "[t]here is no evidence of policy violations and or staff misconduct." ROA.25. Cole appealed this decision on August 30, 2018, stating that prison officials "refused and failed to address the most substantive issues raised in [his] complaint" and asked them to "explain why they refuse to provide [him] with a meat substitute when pork is served" or "prove that their actions or policies are the least restrictive means of achieving their desired goals." ROA.26. In response, on October 9, 2018, TDCJ staff simply stated that "[t]here was no evidence to substantiate [his] allegations of agency policy violations." ROA.27.

After fully exhausting the grievance procedure without recourse, Cole filed the current action *pro se* on January 13, 2020. ROA.7-31. He alleged violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA) when TDCJ refused to provide non-pork meat options, requesting monetary and equitable relief. ROA.7; ROA.10. In his complaint, Cole reiterated the many alternatives that he presented in his grievances to provide him with non-pork meat options that met his religious diet. ROA.16. Cole also explained that whenever pork dishes are served, the facility accounts for all incarcerated people to have a pork plate. ROA.17. This means that the facility could use the cost of preparing the pork option for everyone, including those who do not eat pork, to cook a non-pork meat food. ROA.17-18.

Cole submitted a list of at least 65 people who did not eat pork, and who would forgo their pork trays to offset the cost of a non-pork meat dish, saving the facility money. ROA.17-18; ROA.28-29. Cole also highlighted that non-pork meat options were provided for many other incarcerated people who required it for medical reasons. ROA.17. Finally, he explained that TDCJ previously provided non-pork meat accommodations for hundreds of incarcerated people, so it was unclear why Defendants could not provide him with one now. ROA.17.

Defendants moved for summary judgment on April 6, 2022, contending *inter alia* that Cole did not create a genuine issue of material fact because Cole cannot prove that his religious beliefs are substantially burdened when he can purchase non-pork meat options through commissary. ROA.193-195. Furthermore, Defendants argued that TDCJ's meal selection plan is the least restrictive means to further its compelling interest, relying generally on Fifth Circuit precedent that found that reducing costs in some circumstances can be a compelling interest. ROA.196-197. Defendants argued that the meal selection saves costs, so they are not required to accommodate individual incarcerated people. ROA.197. Defendants noted generally that providing Cole a non-pork meat option would include "adding additional cost to the operation of any unit where Cole is housed." ROA.198. Though Defendants attached a number of supplemental exhibits about the meal selection plan and Cole's commissary bank statements to their summary judgment motion, Defendants did not

include any information about what the specific costs would be to accommodate him. ROA.198; ROA.201-241. Defendants also provided no information about the cost of the meal program in general, nor any other budgetary information. ROA.198; ROA.201-241.

On May 4, 2022, Cole opposed Defendants' motion for summary judgment. ROA.255-267. Cole argued that construing all evidence in the light most favorable to him, there at least remained a genuine dispute of material fact as to his RLUIPA claim. First, he argued that relying on the commissary system to purchase non-pork meat was not an adequate alternative because there was a TDCJ policy that prohibited taking any commissary food items into a TDCJ chow hall. ROA.257. Cole explained that this meant that if he "was caught attempting to smuggle a meat pack into the Chow Hall in order to supplement a meatless meal, this commissary purchased food item could be confiscated and Plaintiff could be subjected to 'Disciplinary Action.'" ROA.257-258. Therefore, either he would be compelled to eat the meatless meal option from the chow hall, face disciplinary action while sneaking in meat to the chow hall, or be forced to eat a commissary meal in his living quarters, a meal that would be "incomplete, nonuniform, and not comparable to the 'essential' food items available in all lunch and dinner meals in the chow hall," since commissary does not sell most fruits, vegetables, or bread. ROA.258.

Cole also argued that Defendants did not meet their burden of showing that they had a compelling interest in denying him meat with his meals, or that their menu was the least restrictive means of doing so. Cole highlighted that "Defendants only quoted case law and present[ed] no [evidence] specific to his case" to show that providing him with non-pork meat options would be a substantial burden. ROA.263-264. Cole reiterated the many alternatives that Defendants had to provide him with his religious diet as laid forth in his complaint. ROA.262-264. Furthermore, Cole distinguished his case from *Baranowski v. Hart*, which Defendants relied on to establish they had a compelling interest in controlling cost. He argued unlike the plaintiff there, "Cole is not requesting Kosher or [halal] menu, nor the [expense] associated with having to [create] a separate kitchen, or require TDCJ officials to substantially alter food preparation procedures, nor use containers, special storage facilities, or utensils in order to completely avoid pork contamination," he is only requesting non-pork meat options which is less of a burden on Defendants. ROA.263.

On March 3, 2023, the Magistrate Judge recommended that the district court grant summary judgment for Defendants. ROA.282-289. The court explained that "Defendants do not challenge the sincerity of Plaintiff's religious beliefs, but they contend that those beliefs are not substantially burdened by TDCJ's meal plans because Plaintiff has been able to purchase meat from the commissary at his own

expense, to consume at the meals where the meat option is pork." ROA.286. The

Court recognized that the Fifth Circuit in *Moussazadeh v. TDCJ*, 703 F.3d 781, 791

(5th Cir. 2012), "rejected this argument in the context of a Jewish inmate who did

not have kosher meals available to him at his prison unit" because the "Fifth Circuit

held that the plaintiff's ability to exercise his religious beliefs was substantially

burdened by the practice of requiring him to pay for his kosher meals, which were

available to other inmates within TDCJ." ROA.286. Yet, despite acknowledging this

precedent, the court held that "it is not necessary to resolve whether Plaintiff's ability

to purchase food from commissary to satisfy his religious dietary requirements

substantially burdens the practice of his religious beliefs because Defendants have

shown that they have a compelling interest in controlling its resources and the cost

of food service, and their meal selection plan is the least restrictive means of

accommodating various dietary needs of the entire inmate population." ROA.286.

Without relying on evidence from the Defendants about the cost of denying

Cole his diet, as they had provided none, the court held that "Defendants have a

compelling governmental interest in controlling costs," citing only to *Baranowski v.

Hart*, 486 F.3d 112, 125-26 (5th Cir. 2007). ROA.287. In analyzing whether the

Defendants' action was the least restrictive means, the court explained that "Plaintiff

does not allege, as in *Moussazadeh*, that he is being denied a particular meal that is

available to some inmates, but not to others. Rather, Plaintiff contends that none of

the three available options conform with his religious belief that he must eat meat at each meal." ROA.287. Relying on *Jones v. Shabazz*, 352 F. App'x 910, 912 (5th Cir. 2009), the court held Cole's claim failed because, like *Jones*, "requiring the TDCJ to specifically accommodate … every one of the 140 religious sects in the TDCJ would create undue burdens on prison administration, and the TDCJ policy represents the least restrictive means available for handling religious dietary issues." ROA.288. Finally, the court noted that in *Muhammad v. Wiles*, No. 20-50279, 2022 WL 73047, at *1-2 (5th Cir. Jan. 7, 2022), the Fifth Circuit affirmed the denial of a preliminary injunction relief for a *pro se* plaintiff who sought a more particularized religious meal. ROA.288.

Cole timely objected to the magistrate's Report and Recommendation. ROA.291-297. In his objections, he highlighted that the court erred in recommending summary judgment because "[D]efendants failed to present any summary judgment evidence demonstrating, that they complied with these rigorous standards demanded by RLUIPA" and that defendants must show some evidence that other means are not less restrictive because the standard "necessarily implies a 'comparison' with other means." ROA.293. Cole noted that "Defendants failed to provide any summary judgment evidence demonstrating that the cost of these food items would be any less or any more than the relief requested by plaintiff. In fact, the record is 'void' of any actual cost for food." ROA.295. Finally, Cole explained

that "not all Fifth Circuit decisions agree, that TDCJ's policies concerning food service are unquestionabl[y] a compelling interest in controlling food cost." ROA.294. Cole pointed to *Moussazadeh*, where the Fifth Circuit found that providing a prisoner with Kosher meals was "less than .005 percent of TDCJ's food budget" and held that the cost was not overly burdensome. ROA.294.

Despite this support, on March 24, 2023, the district court overruled Cole's objections to the Report and Recommendation and adopted it without analysis. ROA.298-299. The court entered a final judgment on the same day, granting summary judgment and dismissing the case. ROA.300. On April 6, 2023, Cole submitted a timely notice of appeal. ROA.301-303.

## SUMMARY OF THE ARGUMENT

The district court erred in granting Defendant's summary judgment motion because it relied on Defendants' blanket justification that they have a compelling interest in reducing costs to deny him a religious accommodation, without requiring the Defendants to provide any evidence to support their claim. Defendants provided no evidence whatsoever about their general food budget, or how providing Cole non-pork meat options would be cost-prohibitive. The district court inappropriately construed facts in Defendants' favor at the summary judgment stage when Defendants did not meet their burden of showing that they had a compelling interest to substantially burden Cole's religious exercise.

Furthermore, the district court erred in holding that requiring Cole to pay for non-pork meat through commissary was the least restrictive means to meet Cole's religious needs because Defendants did not provide any evidence of alternatives they considered, and RLUIPA's standard imposes a burden on Defendants to show why potential alternatives are not possible. The district court erred by blindly deferring to the Defendants' "slippery slope" argument that providing Cole with an accommodation would lead to accommodating thousands of incarcerated people in Cole's unit. RLUIPA necessarily implicates an individual fact-specific inquiry into the particular plaintiff and the particular institutional needs, and the Supreme Court and this Court has rejected this form of reasoning to deny a religious accommodation. Additionally, the district court imposed an inappropriate standard onto Cole to show he had been denied a religious diet that other incarcerated people of the same religion had received when this is not required under RLUIPA.

## STANDARD OF REVIEW

This Court "reviews the district court's summary judgment ruling *de novo*." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020). Summary judgment is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). The Court "must view the evidence in the light most favorable to the

nonmoving party and draw all reasonable inferences in that party's favor." *Cadena*,

946 F.3d at 723.

**ARGUMENT**

**I. Cole has established a genuine dispute that his religious exercise was substantially burdened when Defendants failed to provide him with a diet that conformed with his beliefs.**

Under RLUIPA, government entities may not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). By passing RLUIPA, Congress determined that "prisoners ... have a strong interest in avoiding substantial burdens on their religious exercise, even while confined." *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022).

To establish a RLUIPA claim, a plaintiff bears the initial burden of proving that there is a substantial burden on his religious exercise. *Id.* at 1277. Then, "[o]nce

a plaintiff makes such a showing, the burden flips and the government must 'demonstrate[] that imposition of the burden on that person' is the least restrictive means of furthering a compelling governmental interest." *Id*. (citations omitted). Cases brought pursuant to RLUIPA require a "fact specific inquiry that takes into account the special circumstances of the individual prisoner and prison." *Chance v. TDCJ*, 730 F.3d 404, 411 (5th Cir. 2013). RLUIPA demands that claims "shall be construed in favor of a broad protection of religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 358 (2015); *see also Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) (claims must be "construed broadly in favor of protecting an inmate's right to exercise his religious beliefs.").

There is no dispute that Cole has a sincerely held belief that his Baha'i faith requires him to eat non-pork meat in all his meals. ROA.286. Furthermore, it is well known that specific diets required by one's religion are protected by RLUIPA. *See Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 791 (5th Cir. 2012); *see also Ali v. Stephens*, 822 F.3d 776, 783 (5th Cir. 2016) (RLUIPA defines "'Religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'")

Cole has established a genuine dispute that his religious exercise has been substantially burdened. This Court has clarified the definition of a substantial burden, explaining:

the effect of a government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs. On the opposite end of the spectrum, however, a government action or regulation does not rise to the level of a substantial burden on religious exercise if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed.

*Moussazadeh*, 703 F.3d at 791 (5th Cir. 2012).

TDCJ substantially burdened Cole's religious exercise of his Baha'i faith by failing to provide him with a diet that is consistent with the requirements of his religion. He believes that the Baha'i faith prohibits the consumption of pork per the teachings of the Qu'ran and necessitates eating non-pork meat under Deuteronomy 14, where "God clearly put a 'priority' on the consumption of animal meat." ROA.13. TDCJ's meal plan "forced [Cole] to significantly modify his diet in almost [one-third] of [his] lunch and dinner meals" in order to meet his religious dietary requirements. ROA.13-14. Though he submitted various grievances about his issues, Defendants failed to provide any accommodation for his religious beliefs, nor even inquire into potential solutions.

Cole had no other choice but to spend his own money to purchase meat for his meals using the commissary system, and "through the years, this cost has become substantive." ROA.14. Even when he did buy food through commissary, there is a

TDCJ policy that prohibits bringing commissary items to chow hall, meaning he would receive disciplinary action if he did so. ROA.257-258. He therefore had to forgo free meals provided by TDCJ which had items with nutritional value in order to purchase non-pork meat from commissary. ROA.258. Cole was therefore forced to choose between a series of options that do not fully meet his religious needs and denies benefits provided to all people in TDCJ, namely, a nutritional free meal. As Cole explicitly listed in his opposition to summary judgment, his options were as follows: "(1) Plaintiff can eat the regular tray which contains pork and enjoy the healthy benefits of the essential food items listed above which would violate his religious beliefs; (2) Plaintiff can eat the pork free meatless meal and also enjoy essential food but would also violate his religious beliefs; (3) plaintiff could attempt to sneak a meat pack into the Chow Hall and eat a meal that would satisfy both his religious and health concerns but he would be in violation of Agency policy and disciplinary action could be brought against him;" [or] (4) if he only prepared food in his living quarters with non-pork meat from commissary, this meal "would be incomplete, nonuniform, and not comparable to the essential food items available in all lunch and dinner meals." ROA.258.

TDCJ's failure to provide non-pork meat options and forcing Cole to choose between a series of impossible options clearly meets this Court's definition of a substantial burden. This Court has established that "food is an 'essential' benefit

given to every prisoner, regardless of religious belief." *Moussazadeh*, 703 F.3d at 793. Furthermore, "denial of religiously sufficient food where it is a generally available benefit would constitute a substantial burden on the exercise of religion." *Id.* Cole's religion *requires* non-pork meat, yet Defendants failed to provide him with food that would meet his religious tenets. As such, TDCJ has denied Cole the essential benefit of meals provided by the prison to all incarcerated people and has denied him "religiously sufficient food" as required under law. TDCJ substantially burdens Cole's Baha'i beliefs because it "forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit"— here nutritious, religiously sufficient meals enjoyed by all people in TDCJ— "and, on the other hand, following his religious beliefs." *Id.* at 791.

The district court rejected any argument that Cole's religious exercise was not substantially burdened because he could buy meat from commissary. Defendants only cited to out of circuit or unpublished opinions as support for this argument, ROA.194-195, but the district court recognized that this Court has rejected defendants' argument and has been clear that when prisons require individuals to use their commissary funds to meet their religious dietary needs there is a substantial burden to their religious exercise. ROA.286. The district court pointed to this Court's opinion in *Moussazadeh*, stating that the "Fifth Circuit held that the plaintiff's ability to exercise his religious beliefs was substantially burdened by the practice of

requiring him to pay for his kosher meals, which were available to other inmates within TDCJ." ROA.286; *Moussazadeh*, 703 F.3d at 794.

Indeed, this case is nearly identical to *Moussazadeh*. The plaintiff was Jewish and incarcerated in TDCJ, yet he was forced to eat non-kosher meals which violated his religious beliefs. *Moussazadeh*, 703 F.3d at 785. The plaintiff was placed in a unit where TDCJ did not provide kosher meals for free but provided kosher meals in commissary. *Id.* at 786. The court granted defendants' summary judgment motion on his RLUIPA claim, holding that there was no substantial burden on his religious exercise. *Id.* This Court reversed, holding that the plaintiff's religious exercise was substantially burdened because "every prisoner in TDCJ's custody receives a nutritionally sufficient diet" and "only [the plaintiff] is denied of that benefit, because he is forced to pay for his kosher meals." *Id.* at 794.

Defendants have burdened Cole's religious exercise in the same way. All other incarcerated people in TDCJ are provided a nutritionally sufficient diet free of charge, yet Cole is required to pay for non-pork meat options in order to satisfy his religious needs. This clearly substantially burdens his religious exercise. *See also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1318 (10th Cir. 2010) ("This circuit has rejected the assertion that Jewish inmates had an alternative means of practicing their religion by purchasing or obtaining donated kosher foods"); *Beerheide v. Suthers*, 286 F.3d 1179, 1189 (10th Cir. 2002) (when considering having prisoners pay for

their religious meals, "[f]orcing prisoners to decide between [using funds for] communicating with family and legal representatives, seeking medical treatment, and following religious tenets constitutes a Hobson's choice rather than a true alternative.") In fact, Cole may be more burdened by TDCJ's policy than the plaintiff in *Moussazadeh,* because he is forced to choose between forgoing a nutritionally sufficient diet in chow hall, eating non-pork meat in commissary to meet his religious needs, or facing disciplinary action to meet both his basic nutritional needs and religious needs. As such, he has at the very least created a material dispute that his religious exercise was substantially burdened. [2]

## II. The district court erred in holding that Defendants have a compelling interest in controlling costs, especially when Defendants presented no evidence related to the costs of providing Cole with non-pork meat.

---

[2] The district court failed to make an explicit holding about whether Cole's religion was substantially burdened, even though it acknowledged this Court's precedent holding that prison systems substantially burden religious exercise by forcing them to pay for meals to meet their religious beliefs. *See* ROA.286 ("In this case, it is not necessary to resolve whether Plaintiff's ability to purchase food from the commissary to satisfy his religious dietary requirements substantially burdens the practice of his religious beliefs…") When the district court does not reach a conclusion as to one of RLUIPA's steps, this Court has held this to be an error that is best reversed and remanded for additional fact finding. *See Mayfield v. Texas Dep't of Crim. Just.*, 529 F.3d 599, 615 (5th Cir. 2008) (holding that the district court improperly granted summary judgment as to the plaintiff's RLUIPA claim because "the district court reached no conclusion as to RLUIPA's necessary third step" even assuming the defendants had a compelling interest). This is especially true because RLUIPA "requires a case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a substantial burden." *Id.* at 613.

Once a plaintiff has shown that government action has substantially burdened their religious exercise, the burden flips to the defendant government entity to show that it (1) has a compelling interest to deny the religious accommodation and (2) that its action is the least restrictive means to achieve that compelling interest. *Ramirez v. Collier*, 142 S. Ct. 1264, 1282 (2022). When analyzing a compelling interest, "RLUIPA requires [courts] to 'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants' and 'to look to the marginal interest in enforcing' the challenged government action in that particular context." *Holt*, 574 U.S. at 63 (citations omitted).

The district court erred when it held that "Defendants have a compelling governmental interest in controlling costs." ROA.287. The district court blanketly relied on Defendants' counsel's cursory statement that they have a compelling interest in controlling costs to deny Plaintiff Cole's religious diet without requiring more. ROA.287.

Though it is true that costs may be a compelling interest in some circumstances, defendants cannot simply invoke cost to obtain a compelling government interest. "Congress stated that RLUIPA 'may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.'" *Holt*, 574 U.S. at 358. As a general matter this Court is "hesitant" to hold "conclusions of law that the alleged cost, security, and

administrative difficulties that might result from providing *one* person with his dietary needs constitute a good reason or an undue burden," especially because the Supreme Court has held in other occasions that "'inadequate resources can never be an adequate justification for depriving any person of his constitutional rights.'" *Udey v. Kastner*, 805 F.2d 1218, 1220 (5th Cir. 1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 378 (1977)) (emphasis in original). This Court has held that "[i]n determining whether a cost is compelling, a court may need to 'put th[e] amount in perspective' by measuring the projected expense against the resources devoted to that interest." *Ali v. Stephens*, 822 F.3d 776, 792 (5th Cir. 2016) (quoting *Moussazadeh*, 703 F.3d at 795). Defendants must present some evidence regarding the costs of an accommodation for a court to determine whether it is a compelling interest. After all, the RLUIPA analysis requires a "fact specific inquiry that takes into account the special circumstances of the individual prisoner and prison." *Chance v. TDCJ*, 730 F.3d 404, 411 (5th Cir. 2013).

The court could not have conducted a fact-specific analysis because Defendants presented no facts to weigh. Defendants provided no evidence whatsoever in their motion for summary judgment about the specific costs associated with providing Cole with non-pork meat options, how much they save in denying him his religious diet, or any other costs associated with providing him a religious accommodation. ROA.188-241. In fact, the Defendants wax poetic about cases

(most of which are out of circuit, or unpublished) which assert that saving costs is one of many interests that a government may have, yet they never actually assert that TDCJ has any concerns about the particular costs associated with providing Cole non-pork meat options. ROA.195-197. Their only assertion related to costs at all is their counsel's statement that providing Cole with non-pork meat at each meal service would "add[] additional cost to the operation of any unit where Cole is housed." ROA.198. While they included supplemental evidence to their motion, they included *no evidence whatsoever* about exactly what costs they would incur or why. ROA.201-241.

While Defendants did not provide any evidence of potential costs incurred in providing Cole with his religious diet, Cole did provide evidence to support his argument that the costs would be negligible or nonexistent. Cole explained that whenever pork dishes are served, the facility accounts for all incarcerated people to have a pork plate, meaning that the facility may be incurring unnecessary costs for trays that non-pork eating people will not consume. ROA.17-18. Cole suggested that the facility could use the cost of preparing the pork option for everyone, including those who do not eat pork, to cook a non-pork meat food. ROA.17-18. He also submitted a list of at least 65 people who did not eat pork, who would forgo their pork trays to offset the cost of a non-pork meat dish, saving the facility costs. ROA.17-18; ROA.28-29.

Furthermore, as Cole referenced in his briefing, ROA.262, this Court in *Moussazadeh* held that saving money is not a sufficient compelling interest when accommodating one person. In *Moussazadeh*, defendants similarly asserted that they had a compelling interest in reducing cost to deny the plaintiff his kosher meals free of charge and they presented some evidence that it would double their costs to provide certain kosher loafs and prepackaged meals. *Moussazadeh*, 703 F.3d at 785-86. This Court held that this was not a compelling interest because "the increased cost of providing kosher food to all observant prisoners is minimal—even if the more expensive prepackaged meals, as distinguished from the kosher—kitchen meals, were provided three times a day to each observant prisoner, the cost would only be about $88,000 per year. To provide those meals to [the plaintiff] alone would cost a fraction of this. To put this amount in perspective, the total food budget of TDCJ is $183.5 million," which means the accommodation would save "less than .05% of the food budget." *Id.* at 786. Because this relates to the same prison system, TDCJ, it is safe to assume that in this case, providing Cole, or even all Bah'ai prisoners, with non-pork meat options would also be a miniscule fraction of TDCJ's budget. Unlike the plaintiff in *Moussazadeh*, Cole also is not requesting kosher food that may incur additional costs related to storage and preparation of certain foods and only requests non-pork meat options in whatever way they are prepared. ROA.263. Therefore, accommodating Cole's religious diet would likely be a smaller cost to

TDCJ. *See also Ali v. Stephens*, 822 F.3d 776, 797 (5th Cir. 2016) (performing a similar cost analysis to *Moussazadeh* regarding costs in allowing individuals to wear kufis in TDCJ, denying that defendants had a compelling interest in saving cost because the costs associated with allowing the Muslim population to wear kufis would only account for .004% of their budget).

The district court relied on *Baranowski* as its only evidence that Defendants have a compelling interest in denying his religious diet. Though *Baranowski* supports the general idea that costs may be a compelling interest to deny a religious accommodation, it did not create a general rule that any invocation of cost is an unquestionable compelling interest. *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007). Instead, this Court analyzed the defendants' "summary judgment evidence submitted by Defendants" including various affidavits that explained the cost of providing kosher meals, which established that "TDCJ's budget is not adequate to cover the increased expense of either providing a separate kosher kitchen or bringing in kosher food from the outside." *Id.* Here, there was no evidence provided by the Defendants about cost for the court to analyze. Furthermore, *Baranowski* was decided before *Moussazadeh*, where this Court limited the reach of *Baranowski*'s holding "[b]ased on the record before [the court]" and further clarified how this Court should analyze whether costs are in fact a compelling interest in the future.

*Moussazadeh*, <u>703 F.3d at 795</u>. Therefore, the court's reliance on *Baranowski* was misplaced.

Without any additional information, it was an error for the court to grant summary judgment without a means to assess TDCJ's compelling interest. The district court inappropriately construed the facts in favor of Defendants which conflicts with the standard at the summary judgment phase that requires all inferences to be resolved in favor of the nonmoving party. See *Ellison v. Connor*, <u>153 F.3d 247, 251</u> (5th Cir. 1998). Though some deference is permitted for prison officials, RLUIPA "does not permit such unquestioning deference" to prison officials' purported compelling interests. *Holt*, <u>574 U.S. at 364</u>; *see also Yellowbear v. Lampert*, <u>741 F.3d 48, 59</u> (10th Cir. 2014) (J., Gorsuch) (rejecting defendants' purported interest in banning sweat lodge for Native people because "the deference this court must extend to the experience and expertise of prison administrators does not extend so far that prison officials may declare a compelling governmental interest by fiat"); *Shakur v. Schriro*, <u>514 F.3d 878, 890</u> (9th Cir. 2008) (denying summary judgment because the record "contains no competent evidence as to the additional cost of providing Halal or kosher meat to ... Muslim prisoners"); *Koger v. Bryan*, <u>523 F.3d 789, 800</u> (7th Cir. 2008) ("We can only give deference to the positions of prison officials as required by *Cutter* ... when the officials have set forth those positions and entered them into the record."); *Spratt v. R.I. Dep't of Corr.*, <u>482</u>

F.3d 33, 40 (1st Cir. 2007) ("[T]o prevail on summary judgment, [a prison] 'must do more than merely assert a security concern'") (quoting *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 988 (8th Cir. 2004)).

Under Fed. R. Civ. P. 56 at the summary judgment stage, and under RLUIPA's burden shifting framework, it was Defendants' burden to provide sufficient evidence to prove that there is no dispute that they have a compelling interest in denying Cole's religious diet. 42 U.S.C. § 2000cc–1(a). They have not done so. Defendants' assertion that providing Cole with non-pork meat options may require them to incur some "additional costs" is not enough—indeed, "additional costs" in service of religious liberty was anticipated by Congress in passing RLUIPA. *Id.* at § 2000cc–3(c). By contrast, Cole did provide evidence showing that providing him with non-pork meat options would not incur additional costs, and he provided proposed solutions to any cost problem. Accordingly, he at the very least created a genuine dispute of material fact regarding whether cost was in fact a compelling interest in this case, making summary judgment to Defendants improper.

**III. The district court erred in holding that forcing Cole to pay for a non-pork meat substitute was the least restrictive means because Defendants provided no evidence that they considered any alternatives.**

Even if Defendants had established a compelling interest, Defendants bear the burden of showing that refusing to provide Cole with non-pork meat and forcing him to buy food via commissary was the least restrictive means to achieve their purported

interests. Again, they have not done so. "'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y]. '[I]f a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Holt*, 574 U.S. at 364–65 (2015) (citations omitted).

The district court erred in taking Defendants' generalized assertion that forcing Cole to purchase non-pork meat as the least restrictive means at face value without requiring evidence. Relying only on unpublished opinions, the district court suggests the Defendants are correct that the current TDCJ menu was the least restrictive means because, otherwise, there would be an undue burden on the prison to provide particularized diets for every one of the religious sects in the prison. In doing so, the court accepted Defendants' explanation that their "policy allows for flexibility of dietary needs of each inmate, while reducing the cost of accommodating each idiosyncratic diet for the thousands of inmates in each unit." ROA.197. The district court cited to *Jones v. Shabazz*, 352 F. App'x 910, 912 (5th Cir. 2009), as its support, explaining that the "Fifth Circuit held that "[The plaintiff's] claims also fail because requiring TDCJ to specially accommodate [Nation of Islam] adherents and every one of the other 140 religious sects in the TDCJ would create undue burden on prison administration, and the TDCJ policy

presents the least restrictive means available for handling religious dietary issues." ROA.193-194. In its holding, the district court stated that TDCJ's "meal selection plan is the least restrictive means of accommodating the various dietary needs of the entire inmate population."

The Defendants' justification and the district court's analysis is improper under RLUIPA. Its reasoning frames the question as one about whether the "meal selection plan is the least restrictive means of accommodating various dietary needs of the *entire inmate population,*" but that is the incorrect question. RLUIPA requires that the court inquire as to whether the government action is the least restrictive means for a *particular individual* who is facing a substantial burden on their religious exercise.

*Holt v. Hobbs* is instructive. The defendants there also attempted to argue that their refusal to allow incarcerated people to grow beards for religious purposes was the least restrictive means of achieving their safety and security concerns generally, assuming many other people would begin to grow longer beards were it allowed. *Holt v. Hobbs*, 574 U.S. at 362–63. But the Supreme Court rejected this argument, explaining that defendants argue "that its grooming policy represents the least restrictive means of furthering a 'broadly formulated interes[t],' namely, the Department's compelling interest in prison safety and security. But RLUIPA, like RFRA, contemplates 'a more focused' inquiry and 'requires the Government to

demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Id.* (citations omitted). It went on to explicitly reject this "classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions." *Id.* at 368.

This Court has also declined to accept this kind of slippery slope argument when it lacks concrete evidence. In *Ali v. Stephens*, a Muslim plaintiff requested to wear a kufi in TDCJ. 822 F.3d 776 (5th Cir. 2016). Defendants argued that they had a compelling interest in controlling costs because "all Muslim inmates will want to wear a kufi" so they argued prohibiting kufis was the least restrictive means to meet their interest in controlling costs. *Id.* at 796. Yet, this Court held that this was based on "pure conjecture" and was "not based on any study or survey." *Id.* Furthermore, the defendants created cost estimates asserting that 25% of all incarcerated people would choose to wear some kind of headband if the plaintiff were allowed to wear a kufi. *Id.* at 791. This Court rejected this line of reasoning and stated that RLUIPA requires an "object specific approach to requests for religious items" and "[w]ithout any concrete evidence regarding which items will be requested, the risks these items would pose, and the methods required to search them," so the defendants had not

met their statutory burden of proving that denying the plaintiff a kufi was the least restrictive way to reach their interest. *Id.*

The district court erred in accepting Defendants' "classic rejoinder." Its holding suggests that completely denying Cole's religious diet was the only possible way to meet TDCJ's purported compelling interest in controlling costs because, otherwise, many other individuals would request this accommodation, or worse, that all religious people would flood them with additional requests. This commits the error cautioned by the Supreme Court of succumbing to a "slippery slope argument" without conducting any individualized assessment into Cole's specific religious dietary needs and whether there were other ways to meet Cole's religious dietary needs *in particular*. To allow this line of reasoning would alter RLUIPA's application because the "whole point of RFRA and RLUIPA is to make exceptions for those sincerely seeking to exercise religion … [and] [i]t can't be the case that the speculative possibility that one exception conceivably might lead to others is always reason enough to reject a request for the first exception." *Yellowbear*, 741 F.3d at 62; *see also Schlemm v. Wall*, 784 F.3d 362, 365 (7th Cir. 2015) ("Wisconsin fears that every prisoner would demand a religious diet that requires daily, person-specific preparation so expensive that in the aggregate the costs of compliance would be crippling and the need to avoid them 'compelling.' But it has not tried to estimate what it would cost to honor [plaintiff's] request; expense may be negligible" to meet

plaintiff's Navajo religious diet and "the costs of accommodating other inmates' requests (should any be made) can be left to future litigation.")

Cole presented a series of solutions to save costs and resources through his grievances, his complaint, and in the briefing of this litigation. He explained that no extra labor would be necessary to provide non-pork meat options because they could expend the same labor (for example boiling beef links instead of eggs). ROA.16; ROA.21-26. Furthermore, he constructed ways that the facility could save costs by not preparing pork plates for everyone in the facility, but rather making non-pork options for those who did not eat pork instead. ROA.16; ROA.21-26. He provided a list of 65 people who did not eat pork who would agree to forgo their meals for non-pork meat dishes. ROA.28-29. Cole also stated that individuals are able to receive non-pork meat options for medical reasons, so it was unclear why they could not provide him with those same meals. ROA.17; ROA.261-264.

At its core, Defendants provided no accommodation whatsoever for Cole's religious dietary needs and provided no explanation as to why they could not provide one. Defendants simply stated that that they were following policy and that their pork replacements were acceptable without addressing Cole's specific dietary requests. ROA.25. In Cole's responses, he asked Defendants to justify their actions under the standards laid forth under RLUIPA, asking them to "explain why they refuse to provide [him] with a meat substitute when pork is served" or "prove that

their actions or policies are the least restrictive means of achieving their desired goals." ROA.26. Again, Defendants failed to do so. Despite these many recommendations and requests for answers, Defendants never provided any response, nor any evidence to meet their burden to show that this was the least restrictive means of achieving their interests.

The district court inappropriately construed the facts in favor of Defendants— facts that were never presented. *See Ali v. Stephens*, 822 F.3d 776, 786 (5th Cir. 2016) (courts cannot simply "[defer] to these prison officials' mere say-so that they could not accommodate petitioner's request. RLUIPA, [] demands much more. Courts must hold prisons to their statutory burden, and they must not 'assume a plausible, less restrictive alternative would be ineffective.'") Defendants did not meet their burden in summary judgment or their requirements of RLUIPA to show that they considered any alternatives to provide non-pork meat to satisfy his religious diet, nor any justification about why the only available means to provide Cole with his religious dietary needs was for him to purchase meat through commissary. *See Holt*, 574 U.S. at 371 ("[T]he phrase 'least restrictive means' is, by definition, a relative term. It necessarily implies a comparison with other means.")

*Moussazadeh* clearly establishes that there is at least a material dispute that requiring Cole to pay commissary to meet his religious needs is not the least restrictive way to meet defendants' interest. In *Moussazadeh*, TDCJ argued that

refusing to provide the plaintiff with kosher meals and having him pay for meals through the commissary system was the least restrictive means to provide him with religious meals, which was supported by cases like *Baranowski*. *Moussazadeh*, 703 F.3d at 795. But this Court held that its prior opinions on religious diets did not hold that "there cannot be a less restrictive means of achieving the interests of security and cost reduction, but only that on the record in that case, there was not." *Id.* This Court stressed that it "demands a fact intensive inquiry" and analyzed the alternatives presented by the plaintiff. *Id.* These alternatives included supplementing the regular diet with prepackaged kosher meals, establishing another kosher kitchen, shipping food to the plaintiff's unit, or providing prepackaged kosher meals for free through the commissary. *Id.* at 796. This Court reversed the district court's grant of summary judgment and remanded so that the court could determine whether these alternatives would allow TDCJ to achieve their interests. *Id.* Similarly here, Cole presented additional alternatives that required fact-finding to determine if they are feasible, considering Defendants' interest in saving costs. Furthermore, Defendants could offer alternatives themselves for providing Cole with a means to have his religious diet. Because the district court did not conduct a fact-intensive inquiry below, and Defendants provided none, it was an error to grant Defendants' motion for summary judgment.

Instead of holding that *Moussazadeh* definitively answered the question here, the district court suggested that this case is distinct from *Moussazaeh* because Cole "does not allege as in *Moussazadeh* that he is being denied a particular meal that is available to some inmates but not others. Rather Plaintiff contends that none of the three available options conform with his religious belief that he must eat meat at each meal." ROA.287. First, the court's depiction of Cole's allegations is not complete—Cole has in fact highlighted that some prisoners are provided non-pork meals on a regular basis while he is not. He alleges that individuals who require non-pork meat for medical reasons are consistently given this diet, yet he is not provided one. Defendants have failed to address why Cole cannot be given a non-pork meat option when other incarcerated people can. They have also failed to explain why it would be cost-prohibitive to provide Cole with non-pork meat while it is not for other incarcerated people who require it for medical reasons.

Secondly, this line of reasoning is irrelevant to a RLUIPA analysis. Denial of a preexisting meal is not required to show a violation of RLUIPA—a violation of RLUIPA occurs when an individual's religious exercise is substantially burdened and the government cannot show their actions are the least restrictive means to achieve their interest. There is no requirement for other incarcerated people of the same religion to have received a religious diet, or an unequal application of a rule, to show that there is a substantial burden. The district court's holding would mean

that denying one Jewish prisoner kosher meals would infringe on RLUIPA's protection of religious freedom but denying every Jewish prisoner kosher meals would not. That cannot be correct. Even if an individual is the only practitioner of a religion, prison officials are still required to provide a diet that conforms to their religious needs. *See Holt,* 574 U.S. at 362 (2015) (stating that RLUIPA provides protections "not limited to beliefs which are shared by all members of a religious sect," suggesting even if one individual were to have a particular belief, RLUIPA would equally provide protections for them). Therefore, the district court's reasoning was misplaced, and relying on this distinction was an error.

Finally, the district court's reliance on this Court's unpublished opinion in *Muhammad v. Wiles*, No. 20-50279, 2022 WL 73047, at *1-2 (5th Cir. Jan. 7, 2022) was improper. The district court explained, "[m]ore recently, the Fifth Circuit affirmed the denial of injunctive relief to a prisoner who sought a more particularized religious meal, agreeing with the district court's conclusion that defendants had a compelling interest in refusing to provide the plaintiff an individualized diet." ROA.288. This case is distinct. In *Muhammad*, a *pro se* plaintiff was already receiving a fully Kosher meal but sought a preliminary injunction because the "menu did not meet his personal understanding of the religious requirements for kosher meals." *Id.* at 1. This Court held in a brief and unpublished decision that the plaintiff did not prove that he would face irreparable harm because the prison was already

providing him with a fully kosher diet. *Id.* at 2. Here, TDCJ is not already meeting Cole's religious dietary needs. There is no dispute that the prison is not providing meals required by his religion—he is not provided with non-pork meat options in one third of his meals and is required to use commissary to meet his religious needs. Defendants provided no accommodation for his religious exercise whatsoever and Defendants only argue that Cole is not burdened because he can pay for food in commissary, which this Court has rejected as a proper means to meet defendants' needs of controlling cost. Furthermore, Cole's request of non-pork meat options is even less burdensome than requesting fully kosher meals as provided in *Muhammad* which requires more cost and labor.

Additionally, the district court suggested that *Muhammad* supports the conclusion that prisons cannot ever be expected to provide individualized diets. But that is incorrect. As stated previously, RLUIPA requires an individualized assessment of religious need and defendant's competing interest to determine whether an individualized accommodation is necessary. *See Mayfield v. Texas Dep't Of Crim. Just.*, 529 F.3d 599, 614 (5th Cir. 2008) (this Court "counsels a fact-specific, case-by-case review" of a policy and an individual's ability to practice their religious tenet). Because Defendants provided no evidence of their compelling interest or any information about why there are no other less restrictive means, the district court did not perform the necessary fact-specific, case-by-case review.

Accordingly, there still remains at least a genuine issue of material fact, and this Court should reverse the district court's grant of summary judgment and remand for further proceedings.

## CONCLUSION

This Court should reverse the district court's grant of summary judgment and remand for further proceedings.

Respectfully submitted,

/s/ *Amaris Montes*
Amaris Montes
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
Phone: 202-455-4399
Fax: 202-217-3879
Email: amaris@rightsbehindbars.org

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: September 28, 2023

*/s/ Amaris Montes*
Amaris Montes

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) and (B)(i) and contains, excluding the parts of the document exempted by Fed. R. App. P. 32(f), 8,813 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times Roman.

Dated: September 28, 2023

Respectfully submitted,

/s/ *Amaris Montes*
Amaris Montes