No. 23-40216

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

KEITH M. COLE,

*Plaintiff-Appellant,*

**v.**

LORIE DAVIS; BRYAN COLLIER; TEXAS DEPARTMENT OF CRIMINAL
JUSTICE; MARY GILDER; BOBBY LUMPKIN, DIRECTOR, TEXAS
DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS
DIVISION,

*Defendants-Appellees.*

On Appeal from the United States District Court
For the Eastern District of Texas
No. 1:20-CV-15

APPELLANT'S REPLY BRIEF

Amaris Montes
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
(202) 455-4399

# TABLE OF CONTENTS

*TABLE OF AUTHORITIES* .................................................................................. ii

*INTRODUCTION* ................................................................................................ 1

*ARGUMENT* ....................................................................................................... 2

   **I.  Cole has raised a genuine dispute that his religious practice is substantially burdened by Defendants' failure to provide him with religiously adequate meals.** ................................................................. 2

     *i.  RLUIPA does not require prisoners to show that an identical meal has already been provided to other prisoners.* ........................................... 4

     *ii.  Forcing prisoners to pay for religious meals, in whole or in part, is a substantial burden, regardless of available funds.* ................................. 6

     *iii.  Defendants' reliance on Patel is inappropriate.* .......................... 9

     *iv.  Cole's religious practice is substantially burdened even though he is occasionally able to access acceptable food.* .................................... 11

     *v.  Even if Cole does buy meat in commissary, he is substantially burdened by potential disciplinary action, and Defendants do nothing to address this.* ........ 13

   **II.  Defendants have not provided any evidence to meet their burden of demonstrating they have a compelling interest in denying Cole his religious diet** ...................................................................................................... 15

   **III.  Defendants have not demonstrated that refusing to provide Cole his religious meal is the least restrictive means of furthering their interests.** .... 18

     *i.  Defendants do not argue that they can meet RLUIPA's demanding least-restrictive-means standard in accommodating Cole and Cole alone.* .............. 18

     *ii.  Defendants provided no record evidence on the least restrictive means of meeting their interests.* ........................................................... 22

     *iii.  Defendants introduced no evidence of the consideration of alternatives.* .. 23

*CONCLUSION* ................................................................................................. 25

*CERTIFICATE OF SERVICE* ......................................................................... 26

*CERTIFICATE OF COMPLIANCE* ................................................................. 27

# TABLE OF AUTHORITIES

**Cases**

*Abdulhaseeb v. Calbone*, 600 F.3d 1301 (10th Cir. 2010) .....................................15

*Ackerman v. Washington*, 16 F.4th 170 (6th Cir. 2021) ................................. 15, 17

*Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) ......................................................5

*Ali v. Stephens*, 822 F.3d 776 (5th Cir. 2016) ........................................... 18, 25, 26

*Burwell v. Hobby Lobby Stores*, Inc., 573 U.S. 682 (2014) ........................ 8, 10, 11

*Chance v. Texas Department of Criminal Justice*,730 F.3d 404 (5th Cir. 2013).. 22, 26

*Cutter v. Wilkinson*, 544 U.S. 709 (2005)...............................................................24

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013) .................10

*Holt v. Hobbs*, 574 U.S. 352 (2015) .............................................................. passim

*Jones v. Carter*, 915 F.3d 1147 (7th Cir. 2019)............................................... 11, 13

*Jones v. Shabazz*, 352 F. App'x 910 (5th Cir. 2009) ..............................................19

*Koger v. Bryan*, 523 F.3d 789 (7th Cir. 2008)..........................................................8

*Mayfield v. Texas Dep't of Crim. Just.*, 529 F.3d 599 (5th Cir. 2008)....................26

*McKinney v. Maynard*, 952 F.2d 350 (10th Cir. 1991) .............................................8

*Moussazadeh v. Texas Department of Criminal Justice.*, 703 F.3d 781 (5th Cir. 2012) ...................................................................................................... passim

*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008).................... 6, 12, 14

*Sherbert v. Verner*, 374 U.S. 398 (1963) ..................................................................9

**Statutes**

Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1..................10

**Rules**

Fed. R. Civ. P. 56 ......................................................................................................25

# INTRODUCTION

Keith Cole's Baha'i religion requires him to eat non-pork meat with every meal. Officials at Texas Department of Criminal Justice deny him meals that accord with his religion and force Cole, unlike any other prisoner, to pay for his religious meals through commissary. He also faces potential disciplinary action if he attempts to eat commissary meals with the facility meal. Denying Cole his religious meal, requiring Cole to pay for meat, and forcing Cole to risk of disciplinary action are all substantial burdens on Cole's religious exercise and violate the plain text of RLUIPA. Defendants fail to meaningfully address any of the issues raised by Appellant in his Opening Brief and continue to erroneously assert that Cole is not substantially burdened. That argument cannot stand in the face of the Supreme Court's ruling in *Holt v. Hobbs*, 574 U.S. 352 (2015), or this Court's holding in *Moussazadeh v. Texas Department of Criminal Justice*, 703 F.3d 781 (5th Cir. 2012) which addressed near identical facts. In the alternative, Defendants claim they have a compelling interest in denying Cole his required meals, but they cite to no interest specific to Cole and presented no supporting evidence in the court below. The same is true of Defendants' argument regarding why the restrictions are the least-restrictive means of effectuating their interest: they offer no specific arguments and no evidence. In essence, Defendants rehash

the same arguments they made in the district court, all of which have been
addressed by Appellant in his Opening Brief. Because Cole's practice is
substantially burdened, and the government presents no valid compelling interest
or evidence that their restriction is the least restrictive means of effectuating their
interest, the holding of the district court should be reversed, and the case remanded
for further proceedings.

## ARGUMENT

### I.    Cole has raised a genuine dispute that his religious practice is substantially burdened by Defendants' failure to provide him with religiously adequate meals.

A government action or regulation creates a substantial burden on a religious
exercise if it "pressures the adherent to significantly modify his religious behavior
and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 566-
71 (5th Cir. 2004). Cole presented myriad ways in which his Baha'i religious
practice is substantially burdened by the Texas Department of Criminal Justice
(TDCJ). Cole's faith compels him to eat non-pork meat with every meal but TDCJ's
meal plan "forced [Cole] to significantly modify his diet in almost [one-third] of
[his] lunch and dinner meals" in order to meet his religious dietary requirements.
ROA.13-14. In an attempt to adhere to his religious beliefs, he is forced to buy food
through commissary, and "through the years this cost has become substantive." ROA
14. These facts establish a substantial burden. Cole is forced to either violate his

religion by not eating non-pork meat with his meals, or pay for non-pork meals in commissary, a cost that is born by no other person seeking to effectuate their religious practices. Furthermore, even when he does buy commissary meat, TDCJ policy prohibits bringing commissary items to chow hall, and Cole risks disciplinary consequences if he attempts to adhere to his religion by eating his non-pork meat with the rest of his meal. ROA 257-258.

Defendants argue that Cole's religious practice was not substantially burdened because "Cole has not shown that Appellees pressured him to modify his religious behavior or significantly violate his religious beliefs." Ans. Br. 15. Not so. As explained at length in Appellant's Opening Brief, requiring a prisoner to pay for religiously required food is a substantial burden. Op. Br. 13-19. That rule was established in *Moussazadeh v. Texas Department of Criminal Justice*, 703 F.3d 781, 791 (5th Cir. 2012), and this case is nearly identical to *Moussazadeh*.

Defendants attempt to argue that Cole is not substantially burdened because: i) other prisoners did not already receive an identical religious meal at TDCJ; ii) paying for a religious meal is not a substantial burden for Cole because of his available funds; iii) Cole is "only" denied his meals one third of the time which does not qualify as a sufficient burden; and iv) his potential disciplinary consequences are not an issue. All of these arguments fall in the face of this Court's precedent, as well as precedent from the Supreme Court and sister circuits. In a final effort to argue

that Cole is not substantially burdened, Defendants attempt to import the Eighth Circuit's rule from *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008). But *Patel* cannot control this case because its reasoning is contradicted by Supreme Court and this Court's precedent, and its facts vary from those at issue here.

      *i.*       *RLUIPA does not require prisoners to show that an identical meal has already been provided to other prisoners.*

First, Defendants argue that unlike in *Moussazadeh*, Cole is not substantially burdened because he is not requesting a benefit that is "otherwise generally available" because he has not identified "other TDCJ inmates who are receiving a meal plan with his specific combination of dietary restrictions." Ans. Br. 16. Nowhere in RLUIPA, *Moussazadeh,* nor any other case in this Circuit, is there a mandate that the exact meal plan must already be available somewhere in the prison to meet the substantial burden test. *Moussazadeh* made clear that "food is an 'essential' benefit given to every prisoner, regardless of religious belief" and "denial of religiously sufficient food where it is a generally available benefit would constitute a substantial burden on the exercise of religion." *Moussazadeh* 703 F.3d 781 at 793. This Court, therefore, need simply look to whether TDCJ provides "religiously sufficient food" in the facility. Because it does, *Moussazadeh* is satisfied, and Cole's burden is met.

Accepting Defendants' reading of *Moussazadeh* would thwart the practical application and spirit of RLUIPA. As stated in the Opening Brief, there is no requirement to show an unequal application of a religious accommodation in the RLUIPA analysis for a substantial burden. Op. Br. 34-35. Following the Defendants' reasoning would mean it is unlawful to deny one Catholic prisoner the ability to have communion wafers (if the facility provided communion to some) while it would be permissible to deny all Catholics in the facility the ability to take communion. This cannot be squared with RLUIPA's intent to "provide very broad protection for religious liberty." *Burwell v. Hobby Lobby Stores*, Inc., 573 U.S. 682, 693 (2014). Furthermore, RLUIPA provides protections specifically to individuals who may be in the religious minority or are the only individuals who practice a religion in the facility. *See e.g. Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2008) ("We have long held that '[t]he rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations'"); *McKinney v. Maynard*, 952 F.2d 350, 352 (10th Cir. 1991) ("Although the practice of Native American traditional religion may not conform as neatly to those accommodations already provided in a prison setting, that, standing alone, neither renders the claim of a Native American worshipper frivolous nor terminates the responsibility of prison officials to consider some accommodation.").

Even if this Court were to accept Defendants' flawed analytical framework, Cole pleaded sufficient facts to meet even Defendants' version of the substantial burden test because he has identified other prisoners in the facility who are given non-pork meat options. Individuals at TDCJ are able to receive non-pork meat options for medical reasons, and Defendants do not provide any evidence or justification why they could not provide Cole with those same meals. ROA.17; ROA.261-264. Instead, they ague that "there is a difference between the occasional sandwich allegedly provided to unspecified persons in a medical unit and providing regular meal programming at each meal services." Ans. Br. 33. Yet, Defendants are attempting to include facts not in the record—there was no information provided by Defendants in the proceedings below about the frequency with which they provide non-pork meat to individuals for medical reasons, or how many people they provide it for on a daily basis. Cole, at the very least, has presented a genuine dispute regarding whether others are provided a similar meal, and has raised a dispute of fact on whether his religious exercise is substantially burdened.

ii.    *Forcing prisoners to pay for religious meals, in whole or in part, is a substantial burden, regardless of available funds.*

As explained in Appellants' Opening Brief, Op. Br. 17-19, Defendants' argument that Cole is not substantially burdened when he is forced to pay for meat through commissary fails. This argument cannot stand against the weight of

Supreme Court and circuit precedent. Even the district court below recognized that this argument has been rejected by this Circuit in *Mousazzadeh*. ROA.286.

Defendants cite Cole's available funds to argue that forcing him to buy food to adhere to his religious beliefs is not a substantial burden. Ans. Br. 19-20. But *Mousazadeh* explained that Supreme Court decisions, such as *Sherbert v. Verner*, 374 U.S. 398, 404 (1963), cautioned courts away from situations akin to "a fine imposed against appellant" for his worship. *Id.* at 793. Indeed, the Supreme Court has held that imposing a fine on an individual's ability to adhere to their religion violates religious protections, without any analysis of ability to pay.

In *Hobby Lobby*, for example, a case involving RLUIPA's sister statute, the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, three closely held corporations faced the choice between providing contraceptive coverage for their employees in violation of their religious beliefs or paying a substantial fine that would enable them to omit the coverage to which they objected. *Hobby Lobby*, 573 U.S. at 691 (2014). The Supreme Court held that this choice was no choice at all: the risk of a fine imposed a substantial burden on the owners' religious exercise. *Id.* The Court declined to inquire further into the question of ability to pay, despite criticism in dissent from both the Court and the Tenth Circuit. *Id.* at 719-23; *id.* at 758 (Ginsburg, J., dissenting) (criticizing the majority opinion for "barely paus[ing] to inquire whether any burden imposed ... is substantial"); *Hobby Lobby Stores, Inc.*

*v. Sebelius*, 723 F.3d 1114, 1164 (10th Cir. 2013) (Briscoe, J., concurring in part and dissenting in part).  Instead, it gave great weight to the substantial religious freedom concerns and implicitly disapproved of any ability-to-pay inquiry invoked in earlier opinions. *Hobby Lobby*, 573 U.S. at 719-23 (finding the large fines were clearly a substantial burden without requiring Hobby Lobby to prove its inability to pay or whether the fines would be significant or actually crippling). The Supreme Court consciously chose not to require a demonstration of financial hardship—or detailed findings on finances—before determining that the fine at issue triggered protection for Hobby Lobby's owners. *Hobby Lobby*, 573 U.S. at 685.

The same is true here. Cole's ability to pay is irrelevant to the question of whether it violates RLUIPA to fine an individual for practicing his religion. Further, to require such an analysis for prisoners who are often of limited means and must use their funds for a range of necessary goods—hygiene products, mail, medications, phone calls, and more—would be antithetical to the protections of RLUIPA.

Sister circuits have applied *Hobby Lobby*'s reasoning in the prison context and have nearly unanimously held that requiring prisoners to pay for religious meals creates a substantial burden on religious practice, without analysis of available funds. *See* Op. Br. at 18-19; *see also Jones v. Carter*, 915 F.3d 1147, 1149-52 (7th Cir. 2019) ("When the state forces a prisoner to choose between adequate nutrition and religious practice, it is imposing a substantial burden on his religious practice

under the rules announced in *Hobby Lobby* and *Holt*" … and "there can be no doubt that when the state forces a prisoner to give away his last dime so that his daily meals will not violate his religious practice, it is imposing a substantial burden."). Requiring Cole to use his own funds to be able to adhere to his religious tenets would saddle him with a continuous fine for his required religious meal, while other religious followers are provided that free of charge.

Defendants further attempt to differentiate this case from *Moussazadeh* by noting that the plaintiff in *Moussazadeh* was required to pay for his whole meal while Cole is just required to pay for the meat. This is a distinction without a difference and has no impact on whether the imposition of a fine for a religious meal violates RLUIPA. This fact was never mentioned by this Court in *Moussazadeh* and Defendants offer no reason for its relevance here.

### iii. *Defendants' reliance on Patel is inappropriate.*

Defendants travel the same path they attempted to walk at summary judgement by arguing that *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008) governs this case. *Patel* is out-of-circuit precedent with no authority over proceedings in this circuit. The reasoning in *Patel* also contains serious flaws and is inapplicable here. First, as this Court acknowledged in *Moussazadeh*, the Eighth Circuit defines substantial burden differently from the Fifth Circuit. The Eighth Circuit requires government action to "significantly inhibit or constrain conduct or

expression that manifests some central tenet of a person's individual religious beliefs" in order to constitute a substantial burden. *Moussazadeh*, 703 F.3d at 794. This standard is substantially higher than the one established by this Court, as it requires the government action to inhibit a "central tenet" of one's beliefs—a requirement that the Supreme Court in *Holt* explicitly held was inappropriate in a RLUIPA analysis. *Holt v. Hobbs*, 574 U.S. 352, 357, (2015) ("Congress defined 'religious exercise' capaciously to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'"). Defendants are wrong that these differences in the standard have no impact; the standard *necessarily* impacts the analysis by this Court. In light of the distinctions between *Patel*, *Holt*, and this Court's standards, *Patel* is not even persuasive authority here.

Second, *Patel*'s analysis of "ability-to-pay" as a relevant factor in determining substantial burden is inapplicable here because it was decided prior to *Hobby Lobby* and conflicts with it. *See supra* Section I (ii). Other circuits have analyzed *Patel* post-*Hobby Lobby* and have held that analyzing prisoners' ability-to-pay for religious foods is inappropriate. *See, e.g., Jones v. Carter*, 915 F.3d at 1151.[1]

---

[1] Even district courts within the Eighth Circuit have analyzed *Patel* in light of *Holt* and *Hobby Lobby* and held that requiring prisoners to pay for meals is a substantial burden. *See, e.g., Johns v. Lemmon*, 980 F. Supp. 2d 1055, 1059 (N.D. Ind. 2013); *Muhammad v. Wheeler*, No. 5:15-CV-130-KGB/PSH, 2018 WL 1558279, at *10 (E.D. Ark. Mar. 30, 2018), rev'd and remanded sub nom. *Muhammad v. Mayfield*, 933 F.3d 993 (8th Cir. 2019).

Third, *Patel* is distinguishable on its facts. In *Patel*, kosher and halal food were already being offered free of charge in the dining hall, and the plaintiff needed a particularly nuanced version of both dietary options because of cross-contamination. *Patel*, 515 F.3d at 813. Here, non-pork meat options are not already being offered for every meal and Cole's religious dietary requests are far less nuanced than those at issue in *Patel*. For example, kosher meals require separation of kosher and non-kosher food, "certain types of food must not be served, and a separate set of cookware, utensils, and flatware must generally be used." *Moussazadeh*, 703 F.3d at 786. Cole does not require this extensive preparation, nor particularized non-contamination treatment. He is only requesting non-pork meat options for every meal, which is far less of a burden on the facility.

### iv. *Cole's religious practice is substantially burdened even though he is occasionally able to access acceptable food.*

Defendants suggest that this case is unlike *Moussazadeh* because failing to provide Cole religiously adequate meals *one third of the time* is not sufficient to be a substantial burden. Ans. Br. 17. Defendants' argument rests on a misinterpretation of the burden on Cole's religion and his pleadings below. Defendants assert that "Cole admits that more than two in every three lunches and two in every three dinners are compliant with his religious diet," and "the evidence does not demonstrate that he cannot eat the meatless meals offered consistent with his faith.

Rather meals require an additional ingredient-meat" that Cole can purchase. Ans. Br. 17. Yet, Cole alleges that his religion necessitates eating non-pork meat at every meal, meaning that each time he eats a meatless meal, this violates his belief. ROA.13-14.

Providing religious meals inconsistently, however, is a substantial burden on religious beliefs. *Abdulhaseeb v. Calbone*, is particularly instructive. 600 F.3d 1301 (10th Cir. 2010). In *Abdulhaseeb*, the plaintiff followed a specific Muslim faith that required practitioners to eat halal meat with every meal. *Id.* at 1313. Even though most Muslims found the available vegetarian options acceptable, the plaintiff's religious beliefs were violated because his religious beliefs required to eat halal meat and was provided none. *Id.* Defendants in *Abdulhaseeb* similarly argued that the plaintiff could buy meats in commissary, but the court denied defendants summary judgment and held that not providing halal meat and requiring the plaintiff to buy meat, or even have meat occasionally donated, created a substantial burden on the plaintiff. *Id.* at 1317-18; *see also Ackerman v. Washington*, 16 F.4th 170, 184-87 (6th Cir. 2021) (holding that defendants imposed a substantial burden on Jewish plaintiffs who requested meat and dairy even though they provided a vegan meal as a religious accommodation and could purchase commissary food). Like in *Abudlhaseeb,* it does not matter that Cole gets adequate meal options some of the

time—his religion is substantially burdened each time he is denied the ability to eat the meat required by his religion or else pay.

> v. *Even if Cole does buy meat in commissary, he is substantially burdened by potential disciplinary action, and Defendants do nothing to address this.*

Even if Cole purchases meat through commissary, Cole must risk disciplinary action if he eats the generally available meal along with the meat required with his religion. He asserts that "plaintiff could attempt to sneak a meat pack into the Chow Hall and eat a meal that would satisfy both his religious and health concerns but he would be in violation of Agency policy and disciplinary action could be brought against him;" [or] (4) if he only prepared food in his living quarters with non-pork meat from commissary, this meal "would be incomplete, nonuniform, and not comparable to the essential food items available in all lunch and dinner meals." ROA.258.

Defendants flippantly suggest that Cole can simply "supplement his chow hall meal with a commissary meat purchase for a dollar or two" and eat "this non-pork meat in his cell after returning from the chow hall." Ans. Br. 21. Yet, Defendants conveniently ignore the disciplinary tensions raised by Cole and attempt to admit facts not raised below in the district court. Defendants have never established whether commissary foods may be eaten in prisoner's cell following chow time if they had food in chow hall, or whether prisoners may eat both chow hall food and

commissary foods at the same time. Defendants did not raise such facts below, and it would be improper for this Court to construe facts in favor of Defendants on appeal. Fed. R. Civ. P. 56.

The possibility of disciplinary sanctions for following religious tenets is well-established as a substantial burden. *Holt,* 574 U.S. at 361(holding that the plaintiff's religious exercise was substantially burdened when he faced the choice of facing disciplinary action or following his religious beliefs by maintaining a beard). The Sixth Circuit's decision in *Ackerman* mirrors the burdens presented here. 16 F.4th at 184-87. In *Ackerman*, the prison provided a universal vegan meal for all incarcerated people who qualified for a religious diet, much like the meal plans at TDCJ. *Id.* at 176. The plaintiffs claimed that their Jewish religion required them to eat meat and dairy, so the vegan meal caused a substantial burden to their religious beliefs. *Id.* Defendants argued that plaintiffs could buy appropriate food in commissary, but plaintiffs there, like Cole here, pointed to disciplinary constraints that prevented commissary food from being eaten with chow hall foods. *Id.* at 185. The court held that the prisoners' ability to purchase commissary kosher meat and dairy was "irrelevant" and that failing to provide these meals for free created a substantial burden. *Id.* at 187. Similarly, here, Cole is constrained both by the requirement to pay to follow his religious beliefs, and also by the risk of disciplinary sanctions if he

attempts to eat meat with his meal as required by his faith. Defendants do nothing to address this burden, despite its clear impact on Cole's religious beliefs.

## II. Defendants have not provided any evidence to meet their burden of demonstrating they have a compelling interest in denying Cole his religious diet.

When analyzing a compelling interest, "RLUIPA requires [courts] to 'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants' and 'to look to the marginal interest in enforcing' the challenged government action in that particular context." *Holt*, 574 U.S. at 63 (citations omitted). Defendants have done nothing to meaningfully engage with the points raised by Appellant's Opening Brief and cannot meet their burden to show they have a compelling interest in cost saving.

First, Defendants generally assert that they have an interest in controlling costs without providing any evidence whatsoever about the particular costs associated with providing Cole a religious diet. Ans. Br. 23. Appellant has already noted that the district court erred in accepting Defendants blanket assertion without any record evidence about costs, especially in light of this Circuit's holdings in *Moussazadeh* and *Ali v. Stephens*, 822 F.3d 776, 797 (5th Cir. 2016). Op. Br. at 20-26.

Second, Defendants rely on *Baranowski v. Hart* to justify their interest in controlling costs, without providing any specific evidence of their own about why it would be a substantial burden to provide Cole non-pork meat. Ans. Br. 23. Appellant has explained that though *Baranowski* supports a *general idea* that costs may be a compelling interest, this Court in *Moussazadeh* construed *Baranowski's* narrowly to the evidence presented at the time. Op. Br. 24-26. Furthermore, Appellant has distinguished the present case because Defendants, unlike the defendants in *Baranowski*, provide no evidentiary support about costs in providing Cole with a religious diet. Op. Br. 24-25.

Third, Defendants focus on controlling costs for the "entire inmate population" and succumb to the same generalized slippery slope argument used in *Jones v. Shabazz*, 352 F. App'x 910, 912 (5th Cir. 2009) instead of conducting a fact-specific inquiry into the costs associated with providing Cole, in particular, with a religious diet. Ans. Br. 24. Defendants commit to this argument without addressing Appellant's explanation in his Opening Brief that *Holt* explicitly rejected this slippery slope justification without a more particularized inquiry into the particular claimant, a conclusion reaffirmed by this Circuit in *Ali v. Stephens,* and sister circuits broadly. Op. Br. 27-31.

Finally, Defendants present facts not in evidence in an attempt to argue they have a compelling interest in cost. Defendants state that Cole presented "sixty-five

other inmates who do not eat pork but would prefer an alternative meat option" to show that "Cole's request would affect more than just himself." Ans. Br. at 32. Nowhere in the proceedings does it indicate that each one of these individuals would request a non-pork meat alternative. They may not eat meat at all and request no other religious accommodation; some perhaps would like that option if it were available, but the evidence is simply not in the record.

Instead, what Cole argued was that TDCJ accounts for a pork plate to be provided to all inmates, even if they do not eat pork for religious or other dietary reasons. ROA.17-18. Cole presented names of 65 individuals who currently do not eat pork, in order to present something logical to Defendants: TDCJ could save money by not providing pork meals to prisoners who would refuse them anyway. ROA.17-18; ROA.28-29.

Because Defendants have presented no particularized evidence as to cost and because their fiscal interest in denying Cole a religious accommodation is tenuous at best, they cannot meet their burden to establish a compelling interest that rebuts Cole's interest in having the burden to his religious practice lifted.

### III. Defendants have not demonstrated that refusing to provide Cole his religious meal is the least restrictive means of furthering their interests.

"The least-restrictive-means standard is exceptionally demanding." *Holt*, 574 U.S. at 364 (quoting *Hobby Lobby*, 573 U.S. at 727). Defendants do not meet this standard for three reasons. First, Defendants nowhere argue that accommodating Cole alone would burden them—a required analysis under RLUIPA— but only that the downstream consequences of a ruling in Cole's favor would require accommodating everyone at TDCJ. The Supreme Court has explicitly forbidden this form of analysis on analogous facts. Second, Defendants presented no record evidence at any point in the proceedings as the cost burden they might bear; they cannot now invent a record through legal argumentation. Finally, there is no evidence that Defendants considered any alternative to accommodate Cole. That failure alone merits reversal.

### i. Defendants do not argue that they can meet RLUIPA's demanding least-restrictive-means standard in accommodating Cole and Cole alone.

In their answering brief, Defendants describe their burden as one that results, not from accommodating Cole, but of accommodating the hundreds, or thousands of prisoners at TDCJ. *See, e.g.*, Ans. Br. 26, 28, 30, 31. As discussed in the Opening Brief, Op. Br. 27-31, *Holt* forecloses Defendants' reasoning. "RLUIPA, like RFRA, contemplates 'a more focused' inquiry and 'requires the Government to demonstrate

that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Holt*, 574 U.S. at 363 (citations omitted).

Defendants resist this plain holding, dooming their argument. In doing so, Defendants rely exclusively on irreconcilable pre-*Holt* case law. "[I]n some cases," Defendants write, without explaining the criteria for which cases, courts "may consider the ripple effect of mandating a change under RLUIPA." Ans. Br. 29. Defendants cite to this Court's opinion in *Chance v. Texas Department of Criminal Justice*, which held that "[a]lthough prisons cannot blindly assert that an exception for one person would require exception for everyone, we have recognized the validity of such concerns where experience or evidence warrants that conclusion." 730 F.3d 404, 416 (5th Cir. 2013). There are two problems with Defendants' invocation of *Chance*. First, the opinion predates *Holt* and is inconsistent with it. *See Holt*, 574 U.S. at 368 (citations omitted) ("At bottom, this argument is but another formulation of the 'classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions.' We have rejected a similar argument in analogous contexts, and we reject it again today."). Second, the defendants in *Chance* presented evidence of a compelling interest from the Deputy Director of Health Services, the Unit Regional Director, and estimated

budgetary information—Defendants here have done none of this and are thereby "blindly assert[ing]" in a manner that even *Chance* does not permit.

Defendants attempt to distinguish *Holt*, arguing first that the case is "readily distinguishable because, in that case, the Arkansas prison system failed to present evidence that other inmates would request the same accommodation, a 2-inch beard." Ans. Br. 29.[2] This attempted distinction is inappropriate for at least three reasons. First, as described above, *Holt* makes clear that the RLUIPA analysis must turn on the individual religious needs of the petitioner so it is unclear why Defendants would put on evidence that is irrelevant to the legal question at issue. Second, and true to that principle, *Holt* never mentions whether Arkansas did or did not "present evidence that other inmates would request the same accommodation," Ans. Br. 29. Defendants provide no citation for their description of Arkansas's evidentiary presentation and appear to have invented this purported discrepancy. Third, Defendants here failed to produce the exact same evidence they note that the Arkansas prison did not provide: evidence of impact on other prisoners. Indeed, they put on no case-specific evidence at all. The only number they have used to suggest a floodgates issue comes from Cole's own evidence providing a list of names of

---

[2] Defendants do not accurately describe the plaintiff's accommodation in *Holt*—he sought a half-inch beard, not a two-inch beard. *Holt,* 574 U.S. at 359.

prisoners who do not eat pork and would be willing to forego pork trays, but merely foregoing pork does not mean that they would request a religious tray similar to Cole's.

Defendants also distinguish *Holt* by inventing "a meaningful difference between an inmate's request to be left alone" and "an inmate's request to obtain a service from the prison." Ans. Br. 30. Yet Defendants cite to nothing to establish this as a meaningful distinction considered in a RLUIPA analysis. What must be considered is the particular religious rights at issue, and the required accommodation for the particular individual that would not cause a substantial burden on their religious rights. The distinction that Defendants attempt to draw is a distinction without a difference—mandatory injunctions are consistently provided in the RLUIPA context, as RLUIPA requires affirmatively providing accommodations for religious rights. *Holt*, 574 U.S. at 358 ("Congress stated that RLUIPA 'may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.'")

Indeed, Defendants can provide no authority for this distinction because to do so would be inconsistent with RLUIPA's intent to provide religious rights to institutionalized persons who are unable to pursue private religious rights without depending on the institution itself. *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005) (RLUIPA "protects institutionalized persons who are unable freely to attend to their

religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion"). While ordinary people can choose religiously mandated food, refuse to shave their beards, take the eucharist, engage in group prayer, or study particular holy text, people in the controlled environment of prison cannot control their ability to do any of these rites without religious accommodations.

    *ii.*    *Defendants provided no record evidence on the least restrictive means of meeting their interests.*

Substantively, under RLUIPA, Defendants have the burden to show they had no other means of furthering their compelling interest absent imposing a substantial burden on Cole's religious exercise. *See Holt*, 574 U.S. at 864. Procedurally, on summary judgment, Defendants had the burden to show that no material disputes on this element require resolution by a factfinder. *See* Fed. R. Civ. P. 56; *Ali*, 822 F.3d at 786 (courts cannot simply "[defer] to these prison officials' mere say-so that they could not accommodate petitioner's request."). Defendants cannot meet either burden without actual evidence as to their compelling interest, and they provided none.

As described in Cole's Opening Brief, Defendants provided no evidence to the district court of their purportedly compelling interests in cost-savings. Op. Br. 30-32. On appeal, they invoke the myriad harms that accommodating Cole would

present to their "budgeting," "meal-plan," and "supply system." Ans. Br. 31. None of these claims, however, cite any evidence regarding budgetary or supply system functioning. And this is not a failure of citation: Defendants introduced no evidence to meet their burdens. Defendants, like the district court, cite unpublished and dissimilar cases but these cases are distinguishable because the defendants in those cases introduced evidence to meet RLUIPA's burdens—Defendants have not done so here. *See Chance,* 730 F.3d at 411 (RLUIPA requires a "fact specific inquiry that takes into account the special circumstances of the individual prisoner and prison"); *Mayfield v. Texas Dep't of Crim. Just.*, 529 F.3d 599, 615 (5th Cir. 2008) (holding that RLUIPA "requires a case-by-case, fact-specific inquiry to determine whether the government action or regulation in question imposes a substantial burden.").

iii.    *Defendants introduced no evidence of the consideration of alternatives.*

The least-restrictive-means standard "requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt*, 574 U.S. at 364-65. "The state's burden is not" merely "to show that it considered the claimant's proposed alternatives but rather to demonstrate those alternatives are ineffective." *Ali*, 822 F.3d at 786.

Cole presented a number of alternatives to provide him with non-pork meat to meet his religious requirements while also avoiding any potential issues in the

institution. These included i) preparing non-pork meats with the same cooking methods as non-pork options (for example boiling beef links instead of eggs) so that no extra labor is utilized, ROA.21-26; ii) saving costs by not needlessly preparing a pork tray for everyone in the facility, but instead accounting for those who do not eat pork to save cost (including those identified by Cole), ROA.16; ROA.21-26; and iii) providing the same non-pork meat options that are provided to individuals for medical reasons, ROA.17; ROA.261-64.[3]

Defendants have not met their burden of showing that Cole's proposed alternatives were ineffective because they introduced no evidence showing that they ever considered them, or any other alternative, much less rejected them. Defendants attempt to refute Cole's alternatives in their answering brief through legal argument using claims that were never supported with evidence by Defendants, Ans. Br. 27-34, but that is insufficient—RLUIPA requires that Defendants considered

---

[3] Defendants misstate the alternatives Cole provided. *See* Ans. Br. at 28 (stating that Cole's alternative were (1) "'Provide non-pork meat options' instead of meat free substitutes" (Cole never suggested providing non-pork meat options to replace vegetarian meals); (2) "Not preparing pork plates for everyone in the facility, but rather making non-pork options for those who did not eat pork instead" (Cole stated that they could cut costs by not providing these pork meals for people who do not eat pork, but did not suggest anything more expansive than providing him with non-pork meat options in particular); and (3) "developing a new meat based non-pork meal programing for Appellant and '65 people who did not eat pork'" (Cole provided these names as a way to suggest that TDCJ could save costs by not providing pork meals for these individuals but did not suggest providing a new meal plan for all 65 people)).

alternatives and rejected them, not that they are capable of making arguments against them before this Court. Defendants claim that providing Cole alone non-pork meat would require the whole institution to add a fourth meal plan, that this plan would need to be provided to the 65 other individuals who do not eat pork, and that it would require new meal plans in new units where individuals are transferred. Ans. Br. at 30-31. But Defendants never once raised these factual issues in the summary judgment proceedings below, and their counsel cannot smuggle these facts into the record now.

Because Defendants have not provided evidence that they either created or considered alternatives, they have not met their heavy burden, and summary judgment should be reversed.

## CONCLUSION

For the reasons stated above, this Court should reverse the district court's grant of summary judgment and remand for further proceedings.

Respectfully submitted,
/s/ *Amaris Montes*
Amaris Montes
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
Phone: 202-455-4399
Fax: 202-217-3879
Email: amaris@rightsbehindbars.org

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the date of filing a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: January 17, 2024

*/s/ Amaris Montes*
Amaris Montes

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) and (B)(ii) and contains, excluding the parts of the document exempted by Fed. R. App. P. 32(f), 6,124 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times Roman.

Dated: January 17, 2024

Respectfully submitted,
/s/ *Amaris Montes*
Amaris Montes
