# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
September 11, 2024
Lyle W. Cayce
Clerk

No. 23-40216

Keith M. Cole,

*Plaintiff—Appellant*,

*versus*

Bryan Collier; Texas Department of Criminal Justice; Mary Gilder; Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Defendants—Appellees*.

───────────────────────────

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:20-CV-15

───────────────────────────

Before Wiener, Elrod, and Wilson, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

  Keith M. Cole adheres to the Baháʼí faith. He is also a prisoner in the Texas Department of Criminal Justice. It is his sincerely held religious belief that he must eat non-pork meat with every meal. But TDCJ only provides non-pork meat in about two-thirds of its meals. Cole sued the prison for violating his rights under the Religious Land Use and Institutionalized Persons Act. The district court held that TDCJ has a compelling interest in controlling costs and that its meal-selection policy was the least restrictive

No. 23-40216

means of furthering that interest. Because TDCJ provided no evidence supporting its compelling interest nor demonstrating that its current policy was the least restrictive means of furthering that asserted interest, we VACATE and REMAND for further proceedings consistent with this opinion.

I

Cole is incarcerated in the Stiles Unit of the Texas Department of Criminal Justice, Correctional Division. Cole is a devout member of the Bahá'í faith. As part of his faith, Cole believes that he must abstain from eating pork and that he is required to eat non-pork meat with every meal. The Texas Department of Criminal Justice does not provide non-pork meat for every meal that it serves. In fact, Cole maintains that approximately one-third of lunch and dinner meals do not contain non-pork meat.

TDCJ provides three menu options for each meal: (1) a regular tray, which includes all items offered in the serving line for that meal; (2) a meat-free tray, which excludes any meat in the serving line; and (3) a pork-free tray, which excludes any pork that is offered in the serving line. Options (2) and (3) replace the excluded items with non-meat items such as cheese, beans, eggs, or peanut butter and jelly sandwiches. Importantly, TDCJ never replaces the excluded items with meat.

In addition, inmates are able to purchase non-pork meat from the commissary using personal funds. Indeed, Cole supplemented his TDCJ-provided diet with foods from the commissary including frequent purchases of non-pork meat. The cost of non-pork meat items at the commissary ranges from $0.95 (for a mackerel fillet) to $4.25 (for roast beef and gravy). Over the years, Cole has spent hundreds of his own dollars purchasing foods from the commissary in order to maintain his religious diet. And he expects to continue to incur this expense under current TDCJ policy.

No. 23-40216

II

After exhausting TDCJ's "Offender Grievance Procedure," Cole filed this lawsuit *pro se* against TDCJ and various TDCJ officials (Lorie Davis,[1] Bryan Collier, and Mary Gilder).[2] He alleged violations of the Religious Land Use and Institutionalized Persons Act (codified at 42 U.S.C. § 2000cc–1(a)) by TDCJ when it refused to provide him with non-pork meat for each meal as required by his sincere religious beliefs. Cole sought equitable relief but stated that he would accept any damages award that the court thought proper.

Defendants moved for summary judgment, asserting that TDCJ policy did not substantially burden Cole's exercise of his religious beliefs because he could purchase non-pork meat from the commissary to supplement his meals. In the alternative, defendants argued without evidentiary support that TDCJ's meal-selection plan is the least restrictive means of furthering a compelling interest in controlling resources and the cost of food service.

The magistrate judge concluded that "Defendants have shown that they have a compelling interest in controlling its [sic] resources and the costs of food service, and their meal selection plan is the least restrictive means of accommodating various dietary needs of the entire inmate population."

Over Cole's objection, the district court adopted the report and recommendation of the magistrate judge on March 24, 2023, noting that

---

[1] Lorie Davis was the Director of the Texas Department of Criminal Justice, Correctional Institutions Division when Cole initiated this lawsuit. She has since been replaced by Bobby Lumpkin.

[2] In his complaint, Cole states that he is suing Davis (now Lumpkin), Collier, and Gilder in their official capacities. In addition, Cole's complaint references claims against Gilder in her individual capacity.

3

"TDCJ's food service policies further a compelling interest in controlling costs, and the policies are the least restrictive means to advance those interests." The district court promptly entered Final Judgment, and Cole timely appealed.

## III

This court "reviews the district court's summary judgment ruling *de novo*." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020) (citing *Windham v. Harris Cnty.*, 875 F.3d 229, 234 (5th Cir. 2017)). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When evaluating a motion for summary judgment, we "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena*, 946 F.3d at 723 (citing *SEC v. Kahlon*, 873 F.3d 500, 504 (5th Cir. 2017)).

The Religious Land Use and Institutionalized Persons Act "prohibits a state or local government from taking any action that substantially burdens the religious exercise of an institutionalized person unless the government demonstrates that the action constitutes the least restrictive means of furthering a compelling governmental interest." *Holt v. Hobbs*, 574 U.S. 352, 356 (2015) (citing 42 U.S.C. § 2000cc–1). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). Specifically, RLUIPA states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that

imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1. RLUIPA effectively codified strict scrutiny as the rule of decision for religious free exercise cases brought by prisoners against institutions that receive federal funding.[3] *See id.*

Under RLUIPA, the plaintiff bears the burden of establishing that: (1) his religious belief is sincerely held;[4] and (2) that government policy substantially burdens the exercise of that sincere belief. *Holt*, 574 U.S. at 360–61.

If the plaintiff makes such a showing, the burden then shifts to the government to demonstrate that: (1) its policy is in furtherance of a compelling governmental interest; and (2) its policy is the least restrictive means of furthering that compelling governmental interest. *Id.* at 362.

---

[3] RLUIPA's sister statute, the Religious Freedom Restoration Act, contains substantially similar language. *See* 42 U.S.C. § 2000bb *et seq.* RFRA was passed in response to the Supreme Court's decision in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). That case held that neutral laws of general applicability generally do not violate the First Amendment's Free Exercise Clause. *Holt*, 574 U.S. at 356–57 (citing *Smith*, 494 U.S. at 878–82). In reaching that determination, the Court largely renounced traditional balancing under strict scrutiny. *See, e.g.*, *Wisconsin v. Yoder*, 406 U.S. 205, 214, 219 (1972) (exemplifying strict-scrutiny-style balancing); *Sherbert v. Verner*, 374 U.S. 398, 403, 406 (1963) (same).

Congress relied on Section 5 of the Fourteenth Amendment to make RFRA applicable to the States. But in *City of Boerne v. Flores*, the Supreme Court held that RFRA exceeded Congress's authority under that section. 521 U.S. 507, 532–36 (1997). In response to *City of Boerne*, Congress—this time invoking its Spending and Commerce Clause authority—enacted RLUIPA. *See Holt*, 574 U.S. at 357.

[4] The government does not challenge the sincerity of Cole's religious beliefs.

No. 23-40216

A

The district court did not decide whether Cole's religious exercise is substantially burdened by TDCJ policy. Instead, it concluded that the policy is the least restrictive means of furthering a compelling governmental interest in controlling costs. That determination was erroneous. Indeed, at oral argument, counsel for Defendants disclaimed any reliance on the compelling interest and least restrictive means prongs of RLUIPA. Counsel further conceded that there was no evidence in the record to support a finding that TDCJ policy is the least restrictive means of furthering a compelling governmental interest in controlling costs.

Bare assertions of increased costs do not automatically satisfy the requirement of a compelling governmental interest. In fact, as part of RLUIPA itself, Congress explicitly stated that "this chapter may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." 42 U.S.C. § 2000cc–3(c)). If the relevant statute contemplates increased government expenditures, then it stands to reason that invocation of cost—absent evidence—is insufficient to establish a compelling interest.

When analyzing whether the government has a compelling interest, "RLUIPA requires us to 'scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants' and 'to look to the marginal interest in enforcing' the challenged government action in that particular context." *Holt*, 574 U.S. at 363 (alteration in original) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726–27 (2014)); *see also Ali v. Stephens*, 822 F.3d 776, 792 (5th Cir. 2016) ("In determining whether a cost is compelling, a court may need to 'put th[e] amount in perspective' by measuring the projected expense against the resources devoted to that interest." (alteration in original) (quoting *Moussazadeh v. Texas Dep't of*

*Crim. Just.*, 703 F.3d 781, 795 (5th Cir. 2012))). This is a necessarily comparative analysis. But with no evidence in the record of the cost of accommodating Cole's religious requests, it is impossible to perform the required analysis.

The Seventh Circuit addressed a similar situation in a case where the plaintiff requested religiously required food for a single feast. *Schlemm v. Wall*, 784 F.3d 362 (7th Cir. 2015). It held that the government was not entitled to summary judgment. *Id.* at 365.

> Wisconsin fears that every prisoner would demand a religious diet that requires daily, person-specific preparation so expensive that in the aggregate the costs of compliance would be crippling and the need to avoid them 'compelling.' But it has not tried to estimate what it would cost to honor Schlemm's request; expense may be negligible . . . . [A]nd the costs of accommodating other inmates' requests (should any be made) can be left to future litigation.

*Id.* at 365–66. The same is true for Cole.

Even if it could be said that TDCJ has a compelling interest in limiting expenses, TDCJ would need to demonstrate that its current meal-selection plan is the least restrictive means of furthering that interest. In other words, TDCJ would need to demonstrate that there is no cheaper method of accommodating Cole's religious practices. "'The least-restrictive-means standard is exceptionally demanding,' and it requires the government to 'sho[w] that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting part[y].'" *Holt*, 574 U.S. at 364–65 (alterations in original) (quoting *Hobby Lobby*, 573 U.S. at 728).

Defendants provided no evidence to meet their burden at summary judgment. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)

(*en banc*) ("If the moving party fails to meet this initial burden, the motion must be denied."). Thus, we cannot say—based on the non-existent evidence provided—that TDCJ has used the least restrictive means of furthering a compelling governmental interest.

At bottom, TDCJ's "argument is but another formulation of the classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions." *Holt*, 574 U.S. at 368 (quoting *Gonzales v. O Centro Espírita Beneficente União do Vegetal*, 546 U.S. 418, 436 (2006)). Just as the Supreme Court did in *Holt*, we reject this argument. *Id.* RLUIPA and the summary judgment standard require more.

\*    \*    \*

Because Defendants provided no evidence to meet their burden at summary judgment of demonstrating both a compelling governmental interest and that they used the least restrictive means of furthering that alleged interest, summary judgment should not have been granted. We VACATE and REMAND to the district court for further proceedings consistent with this opinion.